IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

S&G LABS HAWAII, LLC, a Hawaii)        CIVIL 19-00310 LEK-WRP
Limited Liability Company,    )
                              )
          Plaintiff and       )
          Counterclaim        )
          Defendant,          )
                              )
     vs.                      )
                              )
DARREN GRAVES,                )
                              )
          Defendant and       )
          Counterclaim        )
          Plaintiff.          )
_____)
DARREN GRAVES,                )
                              )
          Third-Party         )
          Plaintiff,          )
                              )
     vs.                      )
                              )
LYNN PUANA, M.D. and          )
STEFANIE BADE-CASTRO,         )
                              )
          Third-Party         )
          Defendants.         )
_____)

**<u>ORDER RULING ON THE REMAINING CLAIMS IN THIS CASE</u>**

          The jury returned its verdict in this case on April 5,

2023.  <u>See</u> Special Jury Verdict Form, filed 4/5/23 (dkt.

no. 274) ("Verdict").  Counterclaimant/Third-Party Plaintiff

Darren Graves ("Graves") has the following claims remaining for

decision by the Court:

-a counterclaim seeking attorney's fees under the Defend Trade
     Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3)(D)
     ("Counterclaim Count I");

-a counterclaim seeking attorney's fees under the Hawai`i
     Uniform Trade Secrets Act ("HUTSA"), Haw. Rev. Stat.
     § 482B-5(1) ("Counterclaim Count II");

-a counterclaim for unjust enrichment ("Counterclaim Count V");

-a counterclaim seeking injunctive relief ("Counterclaim
     Count VIII") and a counterclaim seeking declaratory relief
     ("Counterclaim Count IX"); and

-a third-party claim seeking injunctive relief and a third-party
     claim seeking declaratory relief ("Third-Party Count VI"
     and "Third-Party Count VII").

See Order Regarding Remaining Claims, filed 2/21/23 (dkt.

no. 241), at 6-8.[1]  In addition, during trial, the Court informed

the parties that it would calculate the award of any civil

penalty due in connection with Graves's counterclaim asserting a

Haw. Rev. Stat. Chapter 388 claim for unpaid wages

("Counterclaim Count VI").  These will be referred to

collectively as "the Remaining Claims."

---

[1] The operative pleadings are Graves's Second Amended
Counterclaim Against Plaintiff and Counterclaim Defendant S&G
Labs Hawaii, LLC, a Hawaii Limited Liability Company ("Second
Amended Counterclaim") and Graves's First Amended Third-Party
Complaint Against Lynn Puana, M.D. and Stefanie Bade-Castro
("Amended Third-Party Complaint"), both of which are attached to
his Answer to Plaintiff's First Amended Complaint Filed March 1,
2020 [Doc 63] ("Answer to Amended Complaint").  See Answer to
Amend Complaint, filed 5/6/20 (dkt. no. 72), at PageID.809-33
(Second Amended Counterclaim); id. at PageID.836-59 (Amended
Third-Party Complaint).

Graves submitted his Opening Brief Re Remaining Claims for Decision by the Court on May 5, 2023 ("Opening Brief"). [Dkt. no. 278.]  Counterclaim Defendant S&G Labs Hawaii, LLC ("S&G Labs") and Third-Party Defendant Lynn Puana, M.D. ("Dr. Puana"), who is now known as Lynn Welch, M.D. ("Dr. Welch" and collectively "S&G Parties"), filed their responsive brief on May 26, 2023 ("Responsive Brief").  [Dkt. no. 279.]  Graves filed his reply brief on June 2, 2023 ("Reply Brief").  [Dkt. no. 280.]

## DISCUSSION

## I.   <u>Claims Waived by Graves</u>

Graves acknowledges that, "[t]o the extent the current jury verdict adequately compensates Graves for his damages, his claim for unjust enrichment (Counterclaim Count V) is duplicative."  [Opening Brief at 1.]  He therefore waives Counterclaim Count V, as well as his claims for injunctive relief (Counterclaim Count VIII and Third-Party Count VI) and his claims for declaratory relief (Counterclaim Count IX and Third-Party Count VII).  [<u>Id.</u>]  The Court construes his statements as a request to voluntarily dismiss Counterclaim Counts V, VIII, and IX, and Third-Party Counts VI and VII without prejudice.

> [Fed. R. Civ. P.] 41(a)(2) "allows a plaintiff, pursuant to an order of the court, and subject to any terms and conditions the court

3

> deems proper, to dismiss an action without
> prejudice at any time." Westlands Water Dist.
> [v. United States], 100 F.3d [94,] 96 [(9th Cir.
> 1996)].  And "[w]hen ruling on a motion to
> dismiss without prejudice, the district court
> must determine whether the defendant will suffer
> some plain legal prejudice as a result of the
> dismissal." Id.  "Legal prejudice" is "prejudice
> to some legal interest, some legal claim, some
> legal argument." Id. at 97.

Zanowick v. Baxter Healthcare Corp., 850 F.3d 1090, 1093 (9th

Cir. 2017) (some alterations in Zanowick).

Because the S&G Parties' Responsive Brief does not

address Graves's waiver of claims, they have not identified any

legal prejudice that they will suffer if Counterclaim Counts V,

VIII, and IX, and Third-Party Counts VI and VII are dismissed

without prejudice.  Further, based on its knowledge of the

factual and procedural background of the case, this Court is not

aware of any potential legal prejudice to the S&G Parties.  In

light of the representations in the Opening Brief and the lack

of any legal prejudice to the S&G Parties, this Court finds that

they will not suffer any legal prejudice if Counterclaim

Counts V, VIII, and IX, and Third-Party Counts VI and VII are

dismissed without prejudice.  Graves's request to dismiss

Counterclaim Counts V, VIII, and IX, and Third-Party Counts VI

and VII without prejudice is therefore granted.

## II.  **Counterclaim Counts I and II**

This Court previously ruled that: 1) Graves established that S&G pursued its DTSA claim and its HUTSA claim in bad faith after December 28, 2020, but he failed to establish bad faith prior to that point; and 2) Graves is entitled to an award of the reasonable attorneys' fees and costs that he incurred defending against Counts I and II after December 28, 2020.[2]  [Order: Ruling on the Parties' Pretrial Briefs; and Granting in Part and Denying in Part the S&G Parties' Motion For Summary Judgment, filed 10/18/21 (dkt. no. 213) ("10/18/21 Order"), at 21.[3]]  This Court ultimately granted summary judgment in favor of Graves as to Counts I and II.  See Order Granting Defendant's Motion for Summary Judgment, filed 2/17/21 (dkt. no. 121) ("2/17/21 Order"), at 27, 43.[4]

S&G filed a motion for reconsideration of the 2/17/21 Order on March 4, 2021.  [Dkt. no. 132.]  However, the motion did not seek reconsideration of this Court's rulings regarding Counts I and II.  The motion for reconsideration was denied in a March 19, 2021 order.  [Dkt. no. 148.]  Graves is therefore

---

[2] Counts I and II of S&G's First Amended Complaint were its DTSA and HUTSA claims.  See First Amended Complaint, filed 3/1/20 (dkt. no. 63), at ¶¶ 29-33 (Count I), ¶¶ 34-38.

[3] The 10/18/21 Order is also available at 2021 WL 4847430.

[4] The 2/17/21 Order is also available at 2021 WL 621429.

entitled to an award of the reasonable attorneys' fees and costs
that he incurred defending against Counts I and II after
December 28, 2020 until summary judgment was granted on
February 17, 2021.  Graves requests an award of $47,088.84 in
attorney's fees, costs, and general excise tax ("GET"), for that
period.  [Opening Brief at 2.]

   A.   **Attorney's Fees**

      Graves's request reflects the following hours spent by
his counsel and their support staff:

| Name | Hourly Rate | Hours Spent | Subtotal |
|---|---|---|---|
| Leighton Hara | $250 | 106.0 | $26,500.00 |
| Jennifer Ueki | $200 | 44.6 | $ 8,920.00 |
| Kallista Hiraoka | $185 | 17.2 | $ 3,182.00 |
| Kallista Hiraoka (as law clerk) | $ 90 | 1.8 | $   162.00 |
| Sarah Nakayama | $ 90 | 2.9 | $   261.00 |
| | | Total | $39,025.00 |
| | | 4.712% GET | $ 1,838.86 |
| | | **Grand Total** | **$40,863.86** |

See Opening Brief at 3; see also id., Declaration of Counsel
("Hara Decl."), Exh. A (list of time and expense entries).  This
Court has previously stated:

> Reasonable attorneys' fees are generally
> based on the traditional "lodestar" calculation.
> Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).[5]
> "Under the lodestar method, the district court
> multiplies the number of hours the prevailing
> party reasonably expended on the litigation by a
> reasonable hourly rate."  Gonzalez v. City of

_____

[5] Hensley was superseded on other grounds by the Prison
Litigation Reform Act.  See, e.g., Vasquez v. Kraft Heinz Foods
Co., Case No. 3:16-cv-2749-WQH-BLM, 2020 WL 1550234, at *7 (S.D.
Cal. Apr. 1, 2020).

> Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013)
> (citations and internal quotation marks omitted).

[Order Determining Amount of Civil Contempt Sanction, filed 2/24/22 (dkt. no. 227) ("2/24/22 Order"), at 3-4 (citation omitted).[6]]

### 1. **Reasonable Hourly Rate**

In the 2/24/22 Order, this Court found that $250 was a reasonable hourly rate for Mr. Hara, $200 was a reasonable hourly rate for Ms. Ueki, and $185 was a reasonable hourly rate for Ms. Hiraoka's work as an attorney.  2022 WL 561988, at *2. This Court also noted that the magistrate judge previously found that $90 was a reasonable hourly rate for Ms. Nakayama.  Id. (citing Order as to Award of Reasonable Expenses to Defendant Graves Related to His Motion to Compel Responses to Discovery Requests, filed 10/29/20 (dkt. no. 93) ("10/29/20 Order"), at 3-4).  This Court therefore finds that Mr. Hara's, Ms. Ueki's, Ms. Hiraoka's attorney rate, and Ms. Nakayama's requested hourly rates are reasonable for purposes of Counterclaims Counts I and II.

This Court has not previously addressed Ms. Hiraoka's law clerk rate.  In the 10/29/20 Order, the magistrate judge found $90 to be a reasonable hourly rate for a law clerk with "more than a year of legal education."  [10/29/20 Order at 3-4.]

---

[6] The 2/24/22 Order is also available at 2022 WL 561988.

Mr. Hara states that Ms. Hiraoka was admitted to practice law in Hawai`i in 2020.  [Hara Decl. at ¶ 10.d.]  The law clerk hours Ms. Hiraoka spent on this case occurred in December 29, 2020, presumably after she had already been admitted to the bar.  See id., Exh. A at 1.  This Court therefore finds that $90 is a manifestly reasonable hourly rate for Ms. Hiraoka's work as a law clerk.

### 2.   **Hours Reasonably Expended**

The S&G Parties raise numerous objections to the hours included within Graves's request.  See Responsive Brief at PageID.3796-97.  This Court will address each category of the S&G Parties' objections, as well as other entries that this Court finds to be unreasonable.

### a.   **Apportionment**

All of the hours included in Graves's request were spent on this case during the period identified by this Court - i.e., from December 28, 2020, when S&G filed its memorandum in opposition stating that it intended to dismiss Counts I and II,[7] until February 17, 2021, when summary judgment was granted in Graves's favor as to those claims.  The S&G Parties argue it is unreasonable to award Graves all of the attorney's fees that he

---

[7] See S&G's Memorandum in Opposition to Defendant Darren Graves' Motion for Summary Judgment, filed 12/28/20 (dkt. no. 102), at 10-11.

incurred during that period.  This Court agrees that, because Graves's recovery is limited to fees and costs that he incurred defending against S&G's trade secret claims, this Court must attempt to determine what portion of the total fees and costs he incurred during that period were attributable to those claims. See 10/18/21 Order, 2021 WL 4847430, at *8 ("Graves is entitled to an award of the reasonable attorneys' fees and costs that he incurred defending against Counts I and II after December 28, 2020.").

None of the detailed time-entries reflected in Exhibit A expressly refer to S&G's trade secrets claims.  During the relevant period, Graves was both preparing his defense against all of S&G's claims and preparing his case-in-chief for his counterclaims and third-party claims.  Because S&G never acted upon its representation that it would dismiss Counts I and II, Graves's preparation had to include a defense to Counts I and II, until this Court granted summary judgment.  Graves argues apportionment of the attorney's fees incurred during the relevant period between Counts I and II and all of the other claims is not appropriate under the circumstances of this case. [Reply Brief at 5-6.]

This Court finds persuasive the case law regarding apportionment in the context of an award of attorney's fees for

claims sounding in assumpsit under Haw. Rev. Stat. § 607-14.[8]
Apportionment of fees incurred in connection with the assumpsit
claims, as opposed to the non-assumpsit claims, is required.
See BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Civil No. 09-
00181 LEK-KSC, 2015 WL 881577, at *7 (D. Hawai`i Feb. 27, 2015)
(citing Blair v. Ing, 96 Hawai`i 327, 332, 31 P.3d 184, 189
(2001)).  However, "[i]n some cases it may be impracticable or
impossible to apportion fees."  Id. at *9 (citing Blair, 96
Hawai`i at 333, 31 P.3d at 190 ("Because the negligence claim in
this case was derived from the alleged implied contract and was
inextricably linked to the implied contract claim by virtue of
the malpractice suit, we hold that it is impracticable, if not
impossible, to apportion the fees between the assumpsit and non-
assumpsit claims.")).  Graves argues the trade secrets claims

---

[8] Haw. Rev. Stat. § 607-14 states, in relevant part:
     In all the courts, in all actions in the nature of
     assumpsit and in all actions on a promissory note or
     other contract in writing that provides for an
     attorney's fee, there shall be taxed as attorneys'
     fees, to be paid by the losing party and to be
     included in the sum for which execution may issue, a
     fee that the court determines to be reasonable;
     provided that the attorney representing the prevailing
     party shall submit to the court an affidavit stating
     the amount of time the attorney spent on the action
     and the amount of time the attorney is likely to spend
     to obtain a final written judgment, or, if the fee is
     not based on an hourly rate, the amount of the agreed
     upon fee.  The court shall then tax attorneys' fees,
     which the court determines to be reasonable, to be
     paid by the losing party; provided that this amount
     shall not exceed twenty-five per cent of the judgment.

were inextricably intertwined with the other claims in this
case.  [Reply Brief at 5-6.]

        All of the claims in this case were related.
Dr. Welch sought to enter into a new employment contract with
Graves, but the negotiations were protracted and they ultimately
could not agree on the terms of a new contract.  Graves was
suspended and ultimately terminated.  At various points during
that period, Graves attempted to seek other employment for
himself and potentially for other S&G sales personnel.  Because
Dr. Welch believed that, during that process, Graves was
disclosing S&G's trade secrets and other confidential
information to S&G's competitors, S&G filed trade secrets claims
against Graves.  However, it later added breach of contract
claims S&G against Graves, and those claims were not only based
upon the contract dispute and Graves's attempt to seek other
employment.  S&G also alleged Graves created a sexually hostile
work environment, made disparaging statements about Dr. Welch,
and misrepresented himself as an owner and/or partner in S&G.
See 2/17/21 Order, 2021 WL 621429, at *7 (describing the claims
in S&G's First Amended Complaint).  Those claims were distinct
from the trade secrets claims.  Similarly, Graves's counterclaim
against S&G for breach of contract and this counterclaim
alleging a violation of Chapter 388 by failing to pay
compensation due him under his original contract were based upon

Dr. Welch's beliefs regarding the effect of the Eliminating
Kickbacks in Recovery Act ("EKRA");[9] they were not based upon
actions taken because Dr. Welch believed Graved disclosed S&G's
of trade secrets.  This Court therefore finds that Counts I and
II were not so inextricably linked with the other claims in this
case as to render the apportionment of attorney's fees
impossible or impractical.  This Court will therefore apply a
percentage reduction to the total number of otherwise reasonable
hours during the relevant period to account for work done on
claims that were unrelated to the trade secret claims.  While
this Court acknowledges that all of the claims in this case
arose from closely related facts, the legal issues presented by
the trade secrets claims and the other claims were distinct.
This Court therefore finds that a fifty percent apportionment
between trade secret claims and all other claims is necessary.

### b.   Clerical or Ministerial Tasks

This district court has recognized that:

> "[C]lerical or ministerial costs are part of
> an attorney's overhead and are reflected in the
> charged hourly rate."  Nicholas M. ex rel. Laura
> M. v. Dep't of Educ., Hawaii, Civ. No. 09-00162
> HG-LEK, 2010 WL 234862, at *5 (D. Haw. Jan. 21,
> 2010) (citation omitted).  Preparing documents
> for filing, filing documents with the Court,

---

[9] EKRA was part of the Substance Use - Disorder Prevention
that Promotes Opioid Recovery and Treatment for Patients and
Communities Act of 2018.  EKRA is Subtitle J of Title VIII of
the larger act, Pub. L. 115-271, 132 Stat. 3894, 3900, 4108-10
(2018), and it is codified at 18 U.S.C. § 220.

gathering documents for a hearing and the
identification and organization of exhibits are
clerical and noncompensable.  See I.T. ex rel.
Renee T. v. Dep't of Educ., Hawaii, 18 F. Supp.
3d 1047, 1062 (D. Haw. 2014), aff'd sub nom. I.T.
by & through Renee & Floyd T. v. Dep't of Educ.,
Hawaii, 700 F. App'x 596 (9th Cir. 2017) (citing
Haw. Motorsports Inv., Inc. v. Clayton Group
Servs., Inc., Civ. No. 09-00304 SOM-BMK, 2010 WL
4974867, at *5 (D. Haw. Dec. 1, 2010), adopted by
Haw. Motorsports Inv., Inc. v. Clayton Group
Servs. NC, Civ. No. 09-00304 SOM-BMK, 2010 WL
5395669 (D. Haw. Dec. 22, 2010)) (citation
omitted).  "[B]ates stamping and other labeling
of documents" are clerical tasks.  Bruser v. Bank
of Hawaii as Tr., Hawaiian Tr. Co., Ltd., Civ.
No. 14-00387 LEK-WRP, 2020 WL 479261, at *6 (D.
Haw. Jan. 29, 2020) (citation omitted).

        The Court further finds that logging
information is clerical, particularly where no
further explanation is provided.  See Ctr. for
Food Safety v. Vilsack, No. C-08-00484 JSW EDL,
2011 WL 6259894, at *1 (N.D. Cal. Nov. 15, 2011),
report and recommendation adopted, No. C 08-00484
JSW, 2011 WL 6259683 (N.D. Cal. Dec. 15, 2011)
(citing Davis v. City & County of San Francisco,
976 F.2d 1536, 1542 (9th Cir. 1992)) ("It simply
is not reasonable for a lawyer to bill, at her
regular hourly rate, for tasks that a non-
attorney employed by her could perform at a much
lower cost.") (citation omitted).
"[C]oordinating service of documents; and
formatting or printing documents; reviewing
court-generated notices; notifying clients of
court hearings; communications with court staff;
scheduling; and corresponding regarding
deadlines" are all examples of clerical work.
Hawaii Def. Found. v. City & Cty. of Honolulu,
Civ. No. 12-00469 JMS-RLP, 2014 WL 2804445, at *8
(D. Haw. Apr. 22, 2014), report and
recommendation adopted as modified, Civ. No. 12-
00469 JMS, 2014 WL 2804448 (D. Haw. June 19,
2014) (citing Ko Olina Dev., LLC v. Centex Homes,
Civ. No. 09-00272 DAE-LEK, 2011 WL 1235548, at
*12 (D. Haw. Mar. 29, 2011)). . . .

Guzman v. Cnty. of Maui, CIV. NO. 21-00202 DKW-RT, 2023 WL
5436593, at *6 (D. Hawai`i Aug. 1, 2023) (some alterations in
Guzman).

        The time entries in Exhibit A include work related to
scheduling.  See, e.g., Hara Decl., Exh. A at 1 (entry dated
1/5/21, stating: "Emails from and to A. Elkington, Courtroom
Manager re: MSJ hearing).  They also include time for filing
documents.  See, e.g., id. (entry dated 1/4/21, stating "File
Reply re Mtn for Sanctions and Certificate of Service . . .").
Further, there are multiple entries stating that documents were
prepared, but those entries do not indicate legal work, such as
the analysis of such documents.  Such entries suggest mere
compilation and organization.  See, e.g., id. at 4 (entry dated
1/28/21, stating: "Prepare deposition exhibits for court
reporter").  These types of tasks reflect clerical or
ministerial work that, although important to the litigation
processes, should not be included in a court-issued award for
work billed at an attorney's hour rate.

        This Court will therefore deduct the following hours
from the total time requested because these hours reflect
clerical or ministerial work: Ms. Ueki - 0.6 hours,
Ms. Hiraoka's attorney time - 8.5 hours; Ms. Hiraoka's law clerk
time - 0.3 hours; and Ms. Nakayama's time - 0.2 hours.

### c.  **Duplicative Entries**

Both Ms. Ueki and Ms. Hiraoka billed 0.2 hours on January 13, 2021 for a telephone conference with Graves.  See id. at 2 (entries dated 1/13/21).  "The general rule is that two attorneys cannot bill for attending the same meeting."  Mueller v. Dep't of Pub. Safety, CIVIL NO. 17-00571 HG-WRP, 2022 WL 1207322, at *5 (D. Hawai`i Apr. 7, 2022) (citing cases).[10]  This Court will therefor deduct 0.2 hours from Ms. Hiraoka's attorney time.

### d.  **Other Objections**

The S&G Parties appear to argue the January 4, 2021 entry related to the reply regarding a motion for sanctions is not compensable because it is unrelated to the trade secrets claims.  See Responsive Brief at PageID.3797.  It is not necessary for this Court to address that argument because this Court has excluded that time on the ground that it reflects a clerical or ministerial task.

The S&G Parties also appear to argue the time attributed to case strategy, settlement efforts, discovery, and depositions was excessive.  See id.  This Court rejects that argument and find that, except for the apportionment and

---

[10] 2022 WL 1207322 was the magistrate judge's findings and recommendation.  It was adopted, as modified, by the district judge, but the modification is not relevant to the issues currently before this Court.  2022 WL 1204931 (Apr. 22, 2022).

reductions discussed above, the time reflected in Exhibit A was reasonable and attributable to Graves's defense against S&G's trade secrets claims.

### e.   **Total Hours**

After applying the reductions for clerical and ministerial tasks and duplicative entries, this Court finds that the following hours were reasonably expensed during the relevant period: Mr. Hara - 106.0 hours; Ms. Ueki - 44.0 hours; Ms. Hiraoka, attorney - 8.5 hours; Ms. Hiraoka, law clerk - 1.5 hours; and Ms. Nakayama - 2.3 hours.  However, these hours must be reduced by 50% to account for the apportionment between time spent on the trade secrets claims and time spent on other claims.

### 3.   **Award**

This Court finds that the following represents the amount of reasonable attorney's fees incurred in Graves's defense against Counts I and II, from December 28, 2020 to February 17, 2021:

| Name | Hourly Rate | Hours Spent | Subtotal |
|------|------|------|------|
| Leighton Hara | $250 | 53.0 | $13,250.00 |
| Jennifer Ueki | $200 | 22.0 | $ 4,400.00 |
| Kallista Hiraoka | $185 | 4.25 | $  786.25 |
| Kallista Hiraoka (as law clerk) | $ 90 | 1.25 | $  112.50 |
| Sarah Nakayama | $ 90 | 1.15 | $  103.50 |
| | | Total | $18,652.25 |
| | | 4.712% GET | $  878.89 |
| | | **Grand Total** | **$19,531.14** |

### B.   Costs

Graves requests $6,224.98 in costs, plus GET.
[Opening Brief at 2.]  A list of the requested costs is included
within Exhibit A.  [Hara Decl., Exh. A at 7.]  This Court has
reviewed the requested costs and finds that those costs should
be sought through a Bill of Costs, filed after the entry of
judgment, pursuant to Fed. R. Civ. P. 54(d)(1) and Local
Rule 54.1.  This Court therefore declines to include an award of
costs within Plaintiff's recovery for Counterclaim Counts I and
II.

### C.   Ruling

Plaintiff is entitled to the entry of judgment against
S&G in the amount of $19,531.14 as his recovery for Counterclaim
Counts I and II, collectively.

## II.   Counterclaim Count VI

The jury awarded Graves $354,333.33 for his
Chapter 388 unpaid wages claim.  [Verdict at 2, § 1.]  Haw. Rev.
Stat. § 388-10(a) states, in relevant part:

> Any employer who fails to pay wages in accordance
> with this chapter without equitable justification
> or violates this chapter or the administrative
> rules adopted under this chapter shall be liable:
>
> > (1)  To the employee, in addition to the
> > wages legally proven to be due, for a sum
> > equal to the amount of unpaid wages and
> > interest at a rate of six per cent per year
> > from the date that the wages were due[.]

Graves argues he is entitled to an additional award of $438,964.48, consisting of $354,333.33, plus $84,631.15, which is 6% interest per year from May 20, 2019, the date Dr. Welch began to unilaterally reduce his pay.  [Opening Brief at 5-6.]

S&G has the burden of proving that it had an equitable justification to withhold wages.  See Davis v. Four Seasons Hotel Ltd., 810 F. Supp. 2d 1145, 1157 (D. Hawai`i 2011) (citing Arimizu v. Fin. Sec. Ins. Co., Inc., 5 Haw. App. 106, 679 P.2d 627, 631 (1984)).  This district court has stated:

> The legislative history of § 388-10 sheds little light on the meaning of the term "equitable justification."  The legislature amended § 388-10 in 1977 to add the civil penalty, including the language regarding an "equitable justification."  See Hse. Stand. Comm. Rep. No. 205, in 1977 House Journal, at 1374-75; Sen. Stand. Comm. Rep. No. 727, in 1977 Sen. Journal, at 1160.  During subsequent revisions of the law, the civil penalty was discussed as applicable to employers who withhold wages "without valid reason."  Hse. Stand. Comm. Rep. No. 1433-94, in 1994 House Journal, at 1451. Similarly, in 1999, the civil penalty was characterized as applicable for "unjustified wage withholdment [sic]."  Sen. Comm. Rep. No. 643, in 1999 Sen. Journal, at 354.
>
> While there is scant Hawaii law defining the term "equitable justification," the Intermediate Court of Appeals of Hawaii has cited with apparent approval Louisiana cases defining the term as "a good faith non-arbitrary defense." Arimizu, 679 P.2d at 631 n. 4 (citing Carriere v. Pee Wee's Equipment Co., 364 So.2d 555, 557 (La. 1978)).  The Arimizu Court emphasized that "[t]he public policy that employees be paid promptly . . . permeates Part I of HRS Chapter 388 and the legislative intent in [the] enactment of HRS

18

> § 388-10(a)." Id. at 631. As such, it appears
> the penalty must be assessed unless the employer
> can put forth evidence of a valid, or good faith,
> non-arbitrary reason or justification for
> withholding wages in contravention of Hawaii law.
> See Id. at 632 (rejecting a claim of equitable
> justification where the employer argued that it
> had a "good faith" belief that wages could be
> withheld because of an alleged setoff claim
> against the employee); Gurrobat v. HTH Corp., 323
> P.3d 792, 808-09 (Haw. 2014) (finding no
> equitable justification where defendants argued
> that their withholding of service charges
> conformed to an industry-wide trend among Hawaii
> hotels).

Wadsworth v. KSL Grand Wailea Resort, Inc., Civil No. 08-00527
ACK-RLP, 2014 WL 6065875, at *10 (D. Hawai`i Nov. 12, 2014)
(alterations in Wadsworth).[11] This Court also notes that the
Hawai`i Supreme Court cited Arimizu in the Gurrobat analysis of
the equitable justification issue. See Gurrobat, 133 Hawai`i at
17-18, 323 P.3d at 808-09.

In the absence of case law from the Hawai`i Supreme
Court addressing the meaning of "without equitable
justification," in § 388-10(a)(1), this Court "must predict how
the highest state court would decide the issue using
intermediate appellate court decisions, decisions from other
jurisdictions, statutes, treatises, and restatements as

---

[11] Since the date of the Wadsworth order, the Hawai`i State
Legislature has amended § 388-10 three times, but none of the
amendments addresses the "without equitable justification"
standard. See 2017 Haw. Sess. Laws Act 135, § 3; 2018 Haw.
Sess. Laws Act 187, § 2; 2022 Haw. Sess. Laws Act 300, § 3.

guidance." <u>Trishan Air, Inc. v. Fed. Ins. Co.</u>, 635 F.3d 422, 427 (9th Cir. 2011) (quotation marks and citation omitted). Based on the available state case law discussed above, this Court predicts that the Hawai`i Supreme Court would hold that a defendant establishes an § 388-10(a)(1) equitable justification defense if the defendant establishes "a good faith non-arbitrary defense." <u>See</u> <u>Arimizu</u>, 5 Haw. App. at 110 n.4, 679 P.2d at 632 n.4 (citing <u>Carriere v. Pee Wee's Equipment Co.</u>, 364 So.2d 555, 557 (La. 1978); <u>Hess v. Pembo</u>, 422 So.2d 503 (La. App. 1982)).

The S&G Parties argue S&G had a good faith, non-arbitrary reason for withholding compensation from Graves because, after consulting with her attorney, Dr. Welch believed that EKRA rendered the compensation structure under which S&G was paying Graves illegal.[12] [Responsive Brief at PageID.3798.] The S&G Parties contend this "was the **only** reason she made the determination to not pay compensation under the terms of the existing employment contracts starting May 1, 2019." [<u>Id.</u> (emphasis in original).] They further argue

> Her "good faith" is reflected in the fact that she attempted to negotiate replacement salary/bonus terms that would be the rough equivalent of the commission-based provision. She paid Graves a $1 million salary for the month of May 2019, with a promise to adjust the amount upward if they ended up reaching an agreement on an annual salary greater than $1 million.  But

---

[12] Dr. Welch testified at trial that she is the Chief Executive Officer and sole owner of S&G.

> the contract negotiations then broke down over
> the issue of the "non-compete" clause.

[Id. at PageID.3798-99.]

The testimony at trial supports S&G's position that the reason Dr. Welch **initiated** the negotiation of a new employment contract with Graves was her belief that the compensation terms of Graves's existing contract were rendered illegal by EKRA.  Her belief was erroneous.  See 10/18/21 Order, 2021 WL 4847430, at *12 ("This Court therefore concludes, as a matter of law, that the compensation provisions of Graves's Employment Agreement did not violate EKRA.").  Dr. Welch's mistaken belief could arguably constitute a good faith, non-arbitrary reason for withholding Graves's compensation.  However, the record belies the S&G Parties' claim that the desire to comply with EKRA was the only reason that Dr. Welch ultimately decided to withhold wages from Graves.

The first version of the proposed new contract that Dr. Welch sent to Graves on April 23, 2019 provided for compensation through a salary, but it did not contain a non-compete clause.  See Trial Exh. 22 (email dated 4/23/19 from Dr. Welch to Graves, transmitting proposed contract).  On April 29, 2019, Dr. Welch sent him a new version of the proposed contract that contained a one-year non-compete clause.  See

21

Trial Exh. 23 (emails between Graves and Dr. Welch, dated
4/29/19).  Dr. Welch stated:

> I have added in a 1 year non-compete . . . . with
> all the money I am putting in . . . , I can't
> have anyone with a zero non-compete. . . . Isn't
> fair to me as I need to know if some lab tries to
> steal anyone away that my whole business can't be
> taken away.  It's only fair!  Not that I think
> anyone would pay you anywhere near what you are
> currently making so I can't imagine it ever
> happening but need to cover my ass.

[Id. at 1 (some alterations in original).]  There is no
indication in Exhibit 23, or elsewhere in the evidence admitted
at trial that Dr. Welch believed the addition of a non-compete
clause was necessary for S&G to comply with EKRA.

Dr. Welch made it clear that she would not change her
position about the inclusion of a non-compete clause.  See,
e.g., Trial Exh. 35 (email dated 5/21/19 from Dr. Welch to
Graves).  Further, the record indicates that the reason
Dr. Welch decided to withhold Graves's pay was not only to have
compensation terms that she believed complied with EKRA but also
because Graves refused to sign the proposed contract, which had
a non-complete clause.  See id.  Graves testified that he did
not have an objection to changing the salary structure, and that
he believed the salary and bonus that Dr. Welch was offering
would be comparable to what he was receiving under his original
contract.  Graves testified that his objection was to the non-
compete clause.  There is no evidence in the trial record

contradicting this testimony.  Dr. Welch chose to try to add a
non-compete clause at the same time as the changes to Graves's
compensation structure.  Although the changes to the
compensation structure were prompted by Dr. Welch's belief about
EKRA, the addition of the non-compete clause was a business
decision.  When Graves refused to agree to the new contract
because of the non-compete clause, S&G withheld wages that
Graves was entitled to receive under the terms of his original
contract, which remained in effect.  Dr. Welch tried to
capitalize on the passage of EKRA to obtain Graves's agreement
to a non-compete clause.  Graves held his ground and would not
agree to the new contract.  In effect, S&G's withholding of his
wages was a punishment for refusing to agree to the non-compete
clause.  This Court therefore finds that S&G did not have an
equitable justification for withholding his wages.

        Because this Court has found that S&G failed to pay
Graves wages due to him "without equitable justification," S&G
is liable, in addition to the amount awarded by the jury, for "a
sum equal to the amount of unpaid wages and interest at a rate
of six per cent per year from the date that the wages were
due[.]"  See Haw. Rev. Stat. § 388-10(a)(1).  Therefore, as to
Counterclaim Count VI, Graves is entitled to judgment in the
amount of:

-$354,333.33, pursuant the jury's Verdict, [Verdict at 2, § 1,] and

-a civil penalty in the amount of $354,333.33, plus $84,631.15 in interest,[13] pursuant to § 388-10(a)(1).

Thus, he is entitled to a total award of $793,297.81.

## III. **Third-Party Counts II and III**

The jury found that Graves was entitled to $500,000 in general damages and $2,000,000.00 in punitive damages for his defamation claims against Dr. Welch. [Verdict at 5-6, Question No. 5; id. at 7-8, § 6.] The S&G Parties ask this Court to set aside that portion of the Verdict because Dr. Welch's communications to S&G's clients after she suspended him were entitled to a qualified privilege. [Responsive Brief at PageID.3799-800.]

This Court has previously stated:

As part of the analysis of whether the allegedly defamatory communication was unprivileged,

the Court must determine, **as a matter of law**, whether the alleged defamatory communication is entitled to a qualified privilege. Vlasaty v. Pacific Club, 4 Haw. App. 556, 562, 670 P.2d 827, 832 (1983). A qualified privilege "arises when the author of the defamatory statement reasonably acts in the discharge of some public or private

---

[13] The S&G Parties have not contested Graves's calculation of the amount of interest due. They argue only that the civil penalty provision of § 388-10 should not be applied in this case. See Responsive Brief at PageID.3798-99. This Court deems the S&G Parties to have waived any objection to Graves's calculation of interest.

24

duty, legal, moral, or social, and where the
publication concerns subject matter in which
the author has an interest and the
recipients of the publication a
corresponding interest or duty." Aku v.
Lewis, 52 Haw. 366, 371, 477 P.2d 162, 166
(1970). See also Russell v. American Guild
of Variety Artists, 53 Haw. 456, 497 P.2d 40
(1972); Vlasaty at 562, 670 P.2d 827. In
claiming such privilege, it is essential
that the author of the defamatory matter and
the recipients have a common interest and
the communication is of a type reasonably
deemed to protect or further that interest.
Vlasaty at 562, 670 P.2d 827.

Uema v. Nippon Express Haw., Inc., 26 F. Supp. 2d
1241, 1248-49 (D. Hawai`i 1998) (footnote
omitted). However, regardless of whether a
qualified privilege exists as a matter of law,

a finding of a qualified privilege is
insufficient to grant summary judgment.
Rather, the qualified privilege is
conditional and lost if it is abused.
[Vlasaty, 4 Haw. App. at 562, 670 P.2d 827.]
A qualified privilege may be abused by the
use of words not reasonably believed
necessary to protect the particular interest
for which the privilege is given. . . .
Abuse of the qualified privilege is a
determination to be made by the trier of
fact. Calleon v. Miyagi and MTL, Inc., 76
Hawai`i 310, 319, 876 P.2d 1278, 1287
(1994); Vlasaty at 562, 670 P.2d 827.

Id. at 1249.

10/18/21 Order, 2021 WL 4847430, at *16-17 (alterations in

10/18/21 Order) (emphasis added).

During her testimony, Dr. Welch stated that, after she

suspended Graves in June 2019, she spoke with some of the S&G

clients whose accounts Graves had been servicing ("Graves's

Clients"),[14] and she told them Graves would no longer be servicing their accounts, and she told some of them about S&G's lawsuit against Graves.  She denied telling Graves's Clients that Graves had been terminated or that he was no longer with S&G.  In contrast, Graves testified that some of the contact people for Graves's Clients called him and told him about their conversations with Dr. Welch.  Dr. Welch told them Graves was no longer with S&G and that she had to file a complaint against Graves because he had provided confidential information and trade secrets to a third party.  Taylor Yap, who in 2019 was the office manager of Valley Isle Healthcare - one of Graves's Clients, and Anthony Acuria, who had been the manager and later the clinical director of Aloha House - another of Graves's Clients, both gave testimony that was consistent with Graves's testimony.  Based on the jury's responses to the questions in special verdict form, the jury found Graves's, Yap's, and Acuria's testimony to be more credible than Dr. Welch's.  See Verdict at 5, Question Nos. 1-2 (finding that Graves proved by a preponderance of the evidence that Dr. Welch made defamatory statements about Graves and that she published the defamatory statements to a third party); id. at 6, Question No. 3 (finding that Dr. Welch did not prove by a preponderance of the evidence

---

[14] The Court emphasizes that it is using the name "Graves's Clients" solely for the sake of simplicity in the instant Order.

that "she had reasonable grounds to believe the statements she published to a third party were true or substantially true"); id. at 7-8, Question No. 1 (finding that Graves proved by clear and convincing evidence that "Dr. Welch acted intentionally, willfully, wantonly, oppressively, maliciously or in a grossly negligent manner in defaming" him).

Dr. Welch and each of Graves's Clients had a common interest in discussing the manner in which S&G would be servicing that client's account.  If the jury believed Dr. Welch's testimony that she told Graves's Clients that Graves would no longer be serving their respective accounts, such a communication could arguably be deemed to reasonably protect or further their common interest.  The jury, however, did not believe Dr. Welch's testimony.  The jury believed the testimony that Dr. Welch told Graves's Clients that Graves was no longer with S&G, and the jury found that Dr. Welch "acted intentionally, willfully, wantonly, oppressively, maliciously or in a grossly negligent manner" in making that statement about him.  In light of those findings, Dr. Welch's statements were not "of a type reasonably deemed to protect or further" the common interest between Dr. Welch and each of Graves's Clients. See Vlasaty, 4 Haw. App. at 562, 670 P.2d at 832 (citations omitted).  This Court therefore concludes, as a matter of law, that Dr. Welch's defamatory communications to Graves's Clients

are not entitled to a qualified privilege.  The S&G Parties'
request to set aside the jury's award of damages against
Dr. Welch as to Graves's defamation claims is denied.

## CONCLUSION

All of the claims in this case have been resolved, and
the Clerk's Office is DIRECTED to enter judgment in favor of
Graves and against S&G in the following amounts:

- $19,531.14 as to Counterclaim Counts I and II (trade secret
  claims), collectively, pursuant to the 2/17/21 Order and
  the instant Order;

- $3,500,000.00 as to Counterclaim Count III (breach of
  contract), pursuant to the jury's Verdict;

- $793,297.81 as to Counterclaim Count VI (Chapter 388 unpaid
  wages claim), consisting of the amount reflected in the
  jury's Verdict ($354,333.33) and the civil penalty
  determined in the instant Order($438,964.48); and

- $250,000.00 in general damages and $1,000,000.00 in punitive
  damages as to Counterclaim Counts X and XI (wrongful
  termination claims), pursuant to the jury's Verdict.

The Clerk's Office is also DIRECTED to enter judgment
in favor of Graves and against Dr. Puana, who is now known as
Dr. Welch, in the following amounts:

- $500,000.00 in general damages as to Third-Party Counts II and
  III (defamation claims), collectively, pursuant to the
  jury's Verdict; and

- $2,000,000.00 in punitive damages as to Third-Party Counts II
  and III collectively, pursuant to the jury's Verdict.

In addition, the Clerk's Office is DIRECTED to enter
judgment as follows:

-judgment in favor of Graves and against S&G as to all claims in
    S&G's First Amended Complaint, [filed 3/1/20 (dkt.
    no. 63),] pursuant to this Court's 2/17/21 Order;

-judgment in favor of S&G and against Graves as to
    (1) Counterclaim Count IV (breach of the implied covenant
    of good faith and fair dealing), pursuant to the 2/21/23
    Order, (2a) Counterclaim Count V (unjust enrichment),
    (2b) Counterclaim Count VIII (claim for injunctive relief),
    and (2c) Counterclaim Count IX (claim for declaratory
    relief), pursuant to the instant Order;

-judgment in favor Dr. Puana, who is now known as Dr. Welch, and
    against Graves as to (1) Third-Party Count V (tortious
    interference with contract), pursuant to the 2/21/23 Order,
    (2a) Third-Party Count VI (claim for injunctive relief),
    and (2b) Third-Party Count VII (claim for declaratory
    relief), pursuant to the instant Order; and

-judgment in favor Third-Party Defendant Stefanie Bade-Castro
    and against Graves as to (1) Third-Party Count I, pursuant
    to the 10/18/21 Order, (2) Third-Party Count V, pursuant to
    the 2/21/23 Order.

All other claims were previously dismissed pursuant to

stipulations by the parties.

        Judgment is to be entered immediately, and this case

shall be closed.  Any request for reconsideration must be

brought in a post-judgment motion.

        IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 25, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

S&G LABS HAWAII, LLC VS. DARREN GRAVES, ETC; CV 19-00310 LEK-WRP; ORDER RULING ON THE REMAINING CLAIMS IN THIS CASE